IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONALD ALFRED HOOVER                                      PLAINTIFF

V.                                      NO. 16-5041

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Donald Alfred Hoover, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income benefits (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff filed his application for SSI on June 6, 2013, alleging disability since August 23, 2012, due to two herniated discs, a pinched nerve, knee pain in both knees, left leg problems, and sleep problems.[1] (Doc. 9, pp. 177-182, 205, 209). An administrative hearing was held on September 17, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 9, pp. 28-69).

By written decision dated November 19, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – mild lumbar degenerative disc disease, left knee patellofemoral osteoarthritis, status post

---

[1] Plaintiff amended his onset date to October 5, 2013, at the hearing. (Doc. 9, p. 31).

1

partial meniscectomy, venous insufficiency and morbid obesity.(Doc. 9, pl. 16). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 9, p. 17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> Perform light work as defined in 20 CFR 416.967(b) except he can only occasionally climb, balance, stoop, kneel, crouch and crawl.

(Doc. 9, p. 18). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as cashier II and fast food worker. (Doc. 9, pp. 21-22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on January 15, 2016. (Doc. 9, pp. 5-7). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 10, 11).

**II.   Evidence Presented:**

Plaintiff was born in 1964, and in 2011 was involved in a motor vehicle accident. (Doc. 9, p. 205, 283). On September 20, 2011, Dr. Matthew Coker requested Plaintiff undergo an electrodiagnostic study by Dr. Miles M . Johnson. (Doc. 9, p. 283). Dr. Johnson found that the electrodiagnostic study was consistent with a diagnosis of a left L5 and/or S1 radiculopathy. (Doc. 9, p. 284). Dr. Johnson counseled Plaintiff to schedule a follow-up appointment with Dr. Coker's office for further evaluation and treatment. (Doc. 9, p. 284).

On September 30, 2011, a MRI scan of Plaintiff's lumbar spine revealed a musculoligamentous sprain/spasm; mild diffuse annular bulge of L5-S1 and L2-3 discs with

bilateral mild facetoligamentous hypertrophy, mildly compromising the bilateral neural foramina; and no vertebral fractures and no significant spinal stenosis. (Doc. 9, p. 345).

On February 14, 2012, Plaintiff saw Dr. Gannon B. Randolph, of Ozark Orthopaedics. (Doc. 9, p.291). Dr. Randolph noted that Plaintiff was not taking any medication for his pain, had not done true physical therapy for his back or leg, and had not done anything for weight control. (Doc. 291). Dr. Randolph found that Plaintiff had 5/5 motor strength in his bilateral lower extremities, and that his lumbar spine motion was very poor. (Doc. 9, p. 291). He assessed Plaintiff as follows:

1. Morbid obesity. BMI 53
2. Discogenic back pain probably secondary to motor vehicle accident and obesity given the fact the patient did not have any symptoms before his injury
3. I think he had a stretch injury to one of the nerves in his left leg certainly, especially with this trauma as he continues to complain of classic sensory type symptoms in the nerve. However, there is no evidence of significant motor injury on EMBG, and I do not find a compressive type injury in his lumbar spine. I told him the prognosis on this is usually they get better by about 18 months, but they may not get better at all if it is an intrinsic injury to the nerve.

(Doc. 9, p. 291).

On September 17, 2012, Plaintiff presented to the Northwest Medical Center in Springdale, complaining of leg swelling. (Doc. 9, p. 296). An ultrasound of his left lower extremity revealed a normal study with no evidence of thromboembolic disease. (Doc. 9, p. 300). The clinical impression was superficial thrombophlebitis, dependent edema, and folliculitis. (Doc. 9, p. 300).

On July 24, 2013, Plaintiff saw Michael S. Peck, DPM, of Ozark Foot and Ankle, complaining of heel pain and right ankle pain. (Doc. 9, p. 341). Dr. Peck found there were deep varicosities present to the bilateral lower extremities; no significant edema to the foot or

3

ankle, bilaterally; his lower extremity muscle strength and range of motion was equal and symmetrical bilaterally; and there was moderate pain on palpation to the medial calcaneal tubercle of the right heel. (Doc. 9, p. 343). He assessed Plaintiff with Achilles tendinitis/bursitis; plantar fasciitis; and pain in limb. (Doc. 9, p. 343).

On August 30, 2013, Plaintiff presented himself to Washington Regional Medical Center for evaluation of numbness in his hands. (Doc. 9, p. 315). Plaintiff was diagnosed with paresthesia, and additional: "probable carpal tunnel syndrome." (Doc. 9, pp. 317-318).

On September 26, 2013, a General Physical Examination was conducted by Dr. Konstantin Berestnev. (Doc. 9, p. 326). Dr. Berestnev found no muscle weakness or atrophy, and reported that Plaintiff's gait/ coordination was poor. (Doc. 9, p. 329). He also found proprioception was poor; he was not able to tandem walk; he was able to perform all limb functions (hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up a coin); he had 30% grip in his right hand and 35% grip in his left hand; he had edema and stasis dermatitis; and had brawny edema to mid-calf on both. (Doc. 330). Dr. Berestnev diagnosed Plaintiff as follows:

> Degenerative joint disease of the left knee, low back
> C/p MVA, low back pain, left leg nerve injury
> Left knee meniscal injury, c/p surgery
> Peripheral neuropathy
> Peripheral venous insufficiency
> OSA – diagnosed, but not treated
> Morbid obesity.

(Doc. 9, p. 331). Dr. Berestnev reported that Plaintiff needed to have his obstructive sleep apnea treated, needed physical therapy for his back and left leg, and that, otherwise, Plaintiff was limited to "no driving trucks or operating equipment, no heavy lifting." (Doc. 9, p. 331).

4

On or about November 6, 2013, non-examining consultant, Dr. David L. Hicks, completed a Physical RFC Assessment, finding that Plaintiff could perform light work, and could occasionally climb ramps/stairs/ladders/ropes/scaffolds/balance/stoop/knee/crouch and crawl. (Doc. 9, pp. 98-99). In his assessment, he noted "CTS" (carpal tunnel syndrome) with "strong grip" (Doc. 9, p. 100). On or about January 3, 2014, non-examining consultant, Dr. James Wellons, completed a Physical RFC Assessment, making the same findings as Dr. Hicks. (Doc. 9, p. 111).

On March 25, 2014, Plaintiff saw Dr. Matthew Walter, of Northwest Family Medicine, complaining of back pain. (Doc. 9, p. 335). At that time, Plaintiff was ambulating normally, his muscle strength and tone were normal, his station and gait were normal, and there was no cyanosis, edema, or varicosities in his extremities. (Doc. 9, p. 336). He assessed Plaintiff with degeneration of lumbar intervertebral disc and insomnia. (Doc. 9, p. 336).

In his Function Report dated June 21, 2013, Plaintiff reported that he prepared his own meals daily, did cleaning, laundry and household work, which had to be done in sections or parts, went outside every day, drove and rode in a car, shopped for food, shoes, pants, and shirts, spent time with others and went out to eat with his son, and went to church. (Doc. 9, p;. 233-236). He also indicated that although a cane was prescribed by a doctor, he did not need it any more. (Doc. 9, p. 238).

**III. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's

5

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §416.920.

**IV.   Discussion:**

Plaintiff raises the following issues in this matter:1) Whether the ALJ erred in his RFC determination; and 2) Whether the ALJ erred by not finding carpal tunnel to be a medically determinable impairment. (Doc. 10).

**A.  Medically Determinable Impairment:**

Plaintiff argues that the ALJ substituted his own medical opinion for that of a consulting examiner and ER staff, which made findings that Plaintiff had carpal tunnel syndrome. Defendant contends that the ALJ expressly considered the issue of carpal tunnel syndrome, and that the evidence of record does not establish the existence of a medically determinable impairment related to carpal tunnel syndrome during the relevant time period, lasting or expected to last a duration of twelve months.

"To establish entitlement to disability benefits, a claimant must have a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." Freeman v. Colvin, No. 1:15CV132 PLC, 2016 WL 5405407 at *8 (E.D. Mo. Sept. 28, 2016)(citing 42 U.S.C. §423(d)(1)(A); 20 C.F.R. §§404.1505(a), 404.1509). In his decision, the ALJ addressed Plaintiff's upper extremity complaints/carpal tunnel syndrome, and discussed the medical

7

records relating thereto. (Doc. 9, p. 13). The ALJ concluded that there was no evidence of carpal tunnel syndrome documented by testing with obvious clinical sensory and motor deficits, and that Plaintiff therefore did not have medically determinable carpal tunnel syndrome. (Doc. 9, p. 13).

The medical records reflect that on August 30, 2013, when Plaintiff presented to the hospital for evaluation of numbness in his hands, the diagnosis was paresthesia and "probable" carpal tunnel syndrome. (Doc. 9, p. 317-318). On September 26, 2013, when Dr. Berestnev examined Plaintiff, he reported that Plaintiff was able to perform all limb functions (hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up a coin), and had 30% grip in his right hand and 35% grip in his left hand. (Doc. 9, p. 330). When listing Plaintiff's restrictions, Dr. Berestnev limited Plaintiff to no driving trucks or operating equipment, and no heavy lifting and placed no restrictions on Plaintiff's hands. (Doc. 9, p. 331). As indicated earlier, in Dr. Hicks' Physical RFC Assessment, he noted Plaintiff's strong grip at his recent emergency room visit. (Doc. 9, p. 100). On March 25, 2014, Dr. Walter found Plaintiff's muscle strength and tone were normal, and that he had no cyanosis, edema, or varicosities, in his extremities. (Doc. 9, p. 336).

As indicated by Defendant, the four day history of hand numbness reported on August 30, 2013, is insufficient to establish the existence of a medically determinable impairment lasting or expected to last a duration of twelve months. A one-time reference to paresthesia, probable carpal tunnel syndrome, is not sufficient either. The Court does not believe Plaintiff has met his burden of proof on this issue, and there is substantial evidence to support the ALJ's decision not to include carpal tunnel syndrome among Plaintiff's severe impairments. Even if he erred in not finding carpal tunnel syndrome to be a severe

8

impairment, such error was harmless, because the ALJ considered all of Plaintiff's impairments, severe and non-severe, when formulating his RFC. (Doc. 9, p. 15)("In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe ( 20 CFR 416.920(e) and 416.945; SSR 96-8p)") See id. 2016 L 5405407 at *9.

### B. Credibility:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 9, p. 19). The ALJ discussed Plaintiff's daily activities, as well as the imaging studies and electrodiagnostic testing. (Doc. 9, p. 19). The ALJ noted that there was no evidence Plaintiff had undergone any additional treatment other than conservative care, or that anything other than conservative care had been recommended. The ALJ noted that while

9

Plaintiff reported an inability to afford medical treatment, there was no evidence that he was ever turned down for medical care or that he contacted one of the charitable organizations in his area in an effort to obtain medical treatment. (Doc.9, p. 19).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination:

Plaintiff argues that the ALJ erred when he relied on the opinions of two non-examining physicians to form an opinion that Plaintiff was not disabled. In essence, Plaintiff is challenging the ALJ's RFC determination.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-

MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

In determining Plaintiff's RFC, the ALJ addressed all of Plaintiff's medical records. (Doc.9, pp. 19-21). He also noted Plaintiff's daily activities: he drank coffee, watched television, played X-Box, walked, exercised, elevated his legs when sitting, did housework a little at a time and napped/slept when he could, prepared his own meals daily, drove, shopped in stores, went out to eat with his son, and attended church on a regular basis. (Doc. 9, p. 21).

The ALJ gave great weight to the state agency medical consultants' opinions and to Dr. Berestnev's opinion, as being consistent with and supported by the evidence of record as a whole. (Doc. 9, p. 21).  The Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the opinions of the physicians.

**D.  Hypothetical Question to the VE:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform such jobs as cashier II and fast food worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.     Conclusion:**

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 21st day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE